[Cite as *Kent v. Lee*, 2026-Ohio-2969.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| DAVID D. KENT, | : | |
| Appellee, | : | CASE NO. CA2025-06-046 |
| vs. | : | OPINION AND JUDGMENT ENTRY 7/31/2026 |
| ERIKA LEE, | : | |
| Appellant. | : | |
| | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2023 DRB 00642

David D. Kent, pro se

Strauss Troy Co., L.P.A., and Carrie R. Waide, for appellant.

## O P I N I O N

**BYRNE, P.J.**

{¶ 1} Erika Lee appeals from an order of the Clermont County Court of Common

Pleas, Domestic Relations Division. That order dismissed Erika's post-decree motion

seeking relief from judgment under Civ.R. 60(B), or, in the alternative, a new trial under Civ.R. 59, and granted David Kent's motion for attorney fees. For the reasons discussed below, we affirm in part, reverse in part, and remand for further proceedings.

## I. Factual and Procedural Background

### A. The Divorce Proceedings and Decree of Divorce

{¶ 2} Erika Lee ("Erika") and David Kent ("David") married in 2016. In 2023, David filed for divorce. Following that filing, the domestic relations court issued a temporary restraining order pursuant to local rule. That order, among other things, broadly prohibited each spouse from selling, transferring, or concealing any property owned by either spouse without the written consent of the court.

{¶ 3} The parties exchanged discovery but their interrogatory answers, responses to requests for the production of documents, and documents produced in discovery were not filed with the court.

{¶ 4} On November 22, 2024, the parties appeared before the domestic relations court for a final hearing at which they presented the court with an agreement as to all issues. We will refer to this as the "Divorce Hearing." The court found the agreement fair and equitable, and granted the parties a divorce. The court indicated it would review the parties' decree of divorce and after ensuring that it complied with Ohio law, it would sign and file the decree.

{¶ 5} On January 3, 2025, the domestic relations court issued a decree of divorce that incorporated the parties' jointly executed separation agreement. The separation agreement provided that the date of division of marital assets would be April 30, 2023. Notably, this date of division was well over a year prior to the date the parties appeared for the Divorce Hearing.

{¶ 6} The separation agreement addressed the disposition of Broadcom common stock held by David, which stock was acquired by David during the marriage while he worked at Broadcom. That provision stated:

> [David] holds an interest in Broadcom Common Stock held with Fidelity. [David] shall retain the full balance of this account free and clear of any claim of Wife. This account held $70,262 in marital funds, which are being considered in the overall division of the parties' assets and debts. The rest of the stock held in this account is [David's] separate property as it was received after the Date of Division.

{¶ 7} In a section of the separation agreement entitled "Acknowledgments," the agreement stated:

> A. *The parties warrant that each has fully disclosed that person's personal and financial situation* and together they have effected, to their mutual satisfaction, a division of all property, real and personal, of whatever kind or disposition, known to them and wheresoever situated . . .
>
> B. It is mutually agreed by and between the parties that *each has relied upon the statements made and information provided by the other* in determining respective equity rights in this Agreement. *This Agreement is dependent upon the accuracy and completeness of this information as it relates to their financial affairs and ownership rights in all property, real and personal.*

(Emphasis added.)

## B. Post-Decree Filings

{¶ 8} A few weeks after the domestic relations court entered the final decree of divorce, Erika moved the court for relief from judgment under Civ.R. 60(B), or alternatively, for a new trial under Civ.R. 59 ("Post-Decree Motion"). At the same time, Erika sought discovery in connection with her Post-Decree Motion by serving post-decree interrogatories and requests for the production of documents.

{¶ 9} In the Post-Decree Motion, Erika noted that David had not been awarded any "significant" separate property in the parties' separation agreement. But, Erika stated,

she had discovered that on December 9, 2024—after the parties signed the separation agreement, and before the court entered the final divorce decree—David had purchased real estate in Akron, Ohio for $380,000, paying cash. Erika attached to her Post-Decree Motion a limited warranty deed documenting the transfer of the Akron real estate to David. The deed stated that David was "unmarried," even though his divorce to Erika was not yet final at the time. Erika indicated that David never disclosed during the divorce proceedings that he was under contract to purchase the Akron real estate or that he had $380,000 in cash available to him. The facts as alleged in the motion were verified by Erika through a notarized signature.

{¶ 10} Erika asked for relief from judgment under Civ.R. 60(B) "unless and until David can provide an acceptable explanation as to the source of funding of his $380,000 cash real estate purchase. . . ." She specifically asked for relief from judgment based on "surprise" under Civ.R. 60(B)(1), "newly discovered evidence" under Civ.R. 60(B)(2), "fraud" under Civ.R. 60(B)(3), and "any other reason justifying the relief" under Civ.R. 60(B)(5). Alternatively, Erika asked for a new trial pursuant to Civ.R. 59(A).

{¶ 11} In response, David filed a document captioned "Motion to Dismiss / Memorandum in Opposition to Defendant's Verified Motion for Relief from Judgment; Alternatively, Motion for new Trial," and "Plaintiff's Motion for Attorney Fees." We will refer to this filing as David's "Memorandum in Opposition" to Erika's Post-Decree Motion.[1]

{¶ 12} In his Memorandum in Opposition, David explained that the funds used to purchase the Akron real estate were derived from "Restricted Stock Units" ("RSUs") that

---

1. David's use of the term "Motion to Dismiss" was improper, because a motion to dismiss may only seek dismissal of a pleading, not dismissal of a motion. *See* Civ.R. 12 (allowing motions to dismiss in response to "pleading[s]"); Civ.R. 7(A) (defining pleadings as only including a complaint, answer, reply to a counterclaim, answer to a cross-claim, third-party complaint, and third-party answer). Here, the domestic relations court properly considered David's misnamed filing as what it truly was: a memorandum in opposition to Erika's Post-Decree Motion.

were granted to him by his then-employer, Broadcom, pursuant to Broadcom's stock incentive plan. David stated that in June 2024, more than a year after the agreed April 2023 date of division, David left his employment with Broadcom, which resulted in the conversion of a portion of his RSUs to Broadcom common stock. He then sold this stock and used the proceeds to purchase the Akron real estate.

{¶ 13} David further stated in the Memorandum in Opposition that during the divorce proceedings he provided Erika with "comprehensive disclosure" relative to the RSUs. David pointed to interrogatory answers—attached to the Memorandum in Opposition, and thus for the first time entered on the record—in which he disclosed he possessed "RSUs" that would "vest in 2027" and that were valued at $866,484 as of June 6, 2023. David also referenced eight separate documents which he claimed to have produced to Erika in discovery related to the RSUs and their conversion to common stock. But none of these documents were filed with the domestic relations court, so none are part of the record before us. David stated that these documents included Fidelity account statements that listed "all units of granted but unvested stock" and a "Broadcom Exit Package" which he described as "fully outlining the disposition of vested and unvested RSUs upon termination" of employment. David argued that through these disclosures, he made a "full, fair, and transparent disclosures of his assets" to Erika. In further support, David attached an affidavit of income and expenses that was previously filed during the divorce proceedings and which listed—under the section heading "pensions & retirements plans"—"RSUs" titled in his name and valued at $661,000.

{¶ 14} In addition to responding substantively to the merits of Erika's Post-Decree Motion, David moved the domestic relations court to award him attorney fees. He argued attorney fees should be awarded because he fully and exhaustively disclosed the existence of the RSUs, and if Erika had merely contacted his counsel she could have

learned about the source of the funds used to purchase the Akron real estate without having to resort to filing the Post-Decree Motion.

{¶ 15} Erika subsequently filed a motion to compel, asking the court to order David to respond to Erika's post-decree interrogatories and requests for production of documents that she issued in conjunction with the Post-Decree Motion. Erika stated her counsel had attempted to obtain David's discovery responses extrajudicially but had received no response.

{¶ 16} David then moved to stay discovery and for a protective order.

### C. Post-Decree Hearing

{¶ 17} The domestic relations court held a hearing on April 11, 2025. We will refer to this as the "Post-Decree Hearing." Erika appeared at the Post-Decree Hearing in person, with her counsel. Counsel for David appeared by telephone, asked whether Erika was present, and was told she was. David's counsel then stated that she had understood that the Post-Decree Hearing would be for counsel only. The court then stated, "I was told that this was to be converted to a pretrial." Erika's counsel agreed.[2] The court then stated "And, ma'am, we'll get with you in just a minute." Although it is not clear from our record, Erika's counsel has represented that Erika was asked to leave the courtroom and was not present for the remainder of the Post-Decree Hearing.

{¶ 18} No evidence was presented at the Post-Decree Hearing. Instead, the parties' respective counsel made various arguments. Erika's counsel provided the court with background information concerning Erika's pending Post-Decree Motion. Erika's counsel stated that, through discovery in the divorce, David had disclosed, through statements from Fidelity, RSUs that had a value of approximately $1 million as of

---

2. There is conflicting information in the record as to whether the Post-Decree Hearing was a "hearing," a "pretrial," or something else. For consistency we will refer to that proceeding as a "hearing."

December 2023. Erika's counsel then stated that in August 2024, David disclosed that those RSUs were "gone." Erika's counsel stated that Erika was "led to believe" that the non-existence of the RSUs was "related to his termination of employment in June of 2024." Erika's counsel stated that Erika was completely unaware that David had "cashed in" his RSUs and received $1 million less taxes. Erika's counsel asserted that David never disclosed to Erika or her counsel that he converted the RSUs to common stock.

{¶ 19} The court then asked whether David had in fact "cashed in" his RSUs. In response, David's counsel stated that the "most important" consideration was the April 30, 2023 date of division in the parties' separation agreement. David's counsel stated that Erika's new counsel believed that Erika got a "bad deal" in an agreed upon separation agreement that Erika was now "regretting." David's counsel highlighted instances where Erika had been provided information about the RSUs during discovery. David's counsel also stated that "most" of the RSUs were unvested at the date of separation in April 2023.

{¶ 20} As to Erika's assertion that she did not have any Fidelity statements in 2024 demonstrating the value of David's RSUs or any cash-out activity, David argued that Erika could have requested that information during the divorce discovery process and failed to do so.

{¶ 21} After David's counsel finished her explanation of how David had disclosed the RSUs, Erika's counsel stated that he would like to respond, while adding "we're not here to argue the underlying motion." Erika's counsel stated that Erika had, in August 2024, made a discovery request concerning "any documents related to restricted stock units," and that in response, David stated, "None." Erika's counsel stated he was trying, through post-decree discovery, to learn at what date and where the RSUs were disposed of, and the amount of monies received. Erika's counsel also argued that any liquidation of the RSUs while the divorce remained pending was in violation of the court's temporary

restraining order, which broadly prohibited the parties from selling or transferring assets while the divorce was pending.

{¶ 22} In response, David's counsel stated that the RSUs were converted to common stock and added "that's why there were none [that is, no RSUs]. Whether her prior counsel failed to do adequate discovery is on her prior counsel." David's counsel once again iterated that the RSUs were disclosed to Erika. David's counsel explained that the "none" response to the document request about RSUs was accurate because at the time of the discovery request, the RSUs had already been converted into common stock when David was terminated from his employment at Broadcom (in June 2024).

{¶ 23} Erika's counsel then stated that Erika understood that unvested RSU's "evaporated" upon David's termination from Broadcom. David's counsel replied, "it doesn't matter what she understood or didn't understand." And the court replied, "Right, it's a disclosure issue."

{¶ 24} The court then stated, "So, I have to look and decide whether husband properly disclosed the . . . that he had unvested stock interest and whether wife properly pursued discovery in terms of asking questions regarding or getting documents regarding . . . that asset."

{¶ 25} The court ended the Post-Decree Hearing stating it would hold the discovery motions in abeyance "pending my decision on the 60(B)."

### D. Domestic Relations Court's Decision on Pending Motions

{¶ 26} In May 2025, the domestic relations court issued its decision on the parties' various post-decree filings.

{¶ 27} With regard to Erika's request for Civ. R. 60(B) relief from judgment, the domestic relations court found that Erika had failed to present sufficient factual information to warrant an evidentiary hearing. The court stated that the parties did not

dispute that David disclosed the existence of the RSUs to Erika during the negotiation of the separation agreement and described the parties' counsels' arguments at the Post-Decree Hearing. The court then made factual findings, stating, "[Erika's] belief that the RSU's were extinguished when [David] left his employment with Broadcom was not due to [David's] lack of disclosure. Rather, [Erika] made assumptions about Broadcom's Stock Incentive Plan which she relied upon to her apparent detriment." Accordingly, the court found that Erika had not demonstrated surprise, newly discovered evidence, fraud, or any other ground that would entitle Erika to relief under Civ.R. 60(B)(1), (2), (3), or (5), respectively. The court therefore denied Erika's request for relief from judgment under Civ.R. 60(B).

{¶ 28} As to Erika's Civ.R. 59 motion for a new trial, the court found that Erika had provided "no factual or evidentiary support" to show irregularities in the proceedings, misconduct on David's behalf, surprise, or newly discovered evidence. The court again highlighted that David had disclosed his interest in RSUs. The court denied Erika's Civ.R. 59 request for a new trial.

{¶ 29} The court also denied Erika's motions to compel discovery, finding that the court's denial of Erika's motions for relief under Civ.R. 60(B) and for a new trial under Civ.R. 59 rendered the discovery motions moot.

{¶ 30} The court granted David's motion for attorney fees, but the court did not explain its rationale, other than stating that such an award was equitable. Because David had not submitted any evidence in support of his motion for attorney fees, the court awarded David $500 as a "presumed" reasonable attorney fee.

{¶ 31} Erika appealed, raising three assignments of error. David did not file an appellate brief or otherwise participate in this appeal.

## II. Law and Analysis

## A. Civ.R. 60(B) Motion for Relief from Judgment

{¶ 32} Erika's first assignment of error states:

THE TRIAL COURT ERRED IN DISMISSING [ERIKA'S] MOTION FOR RELIEF FROM JUDGMENT AND FOR FAILING TO HOLD AN EVIDENTIARY HEARING.

{¶ 33} In support of her first assignment of error, Erika contends that she presented the domestic relations court with "operative facts" that required the court to grant her an evidentiary hearing on her Civ.R. 60(B) motion, and that it erroneously failed to hold such a hearing. She asserts that she presented the court with evidence that David purchased real estate valued at $380,000 with cash shortly after the court held the Divorce Hearing, and that none of David's financial disclosures while the divorce was pending reflected available assets sufficient to provide David with the means to pay this amount of cash. Erika contends that the only logical conclusion that can be reached is that David failed to disclose the full details of his unvested Broadcom RSUs.

{¶ 34} Erika also faults the domestic relations court for taking no evidence or testimony from either party but basing its decision on factual findings for which there is no record evidence in support.

## 1. Civ.R. 60(B) and Standard of Review

{¶ 35} Civ.R. 60(B) provides, in full:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B);

(3) fraud (whether heretofore denominated intrinsic or

- 10 -

extrinsic), misrepresentation or other misconduct of an adverse party;

(4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(5) any other reason justifying relief from the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.

The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules.

{¶ 36} "To prevail on a Civ.R. 60(B) motion, the moving party must demonstrate that (1) [s]he has a meritorious defense or claim to present if relief is granted, (2) [s]he is entitled to relief under one of the grounds stated in Civ.R. 60(B)[(1) through (5)], and (3) the motion is made within a reasonable time." *Total Quality Logistics, L.L.C. v. ATA Logistics, Inc.*, 2020-Ohio-1553, ¶ 7 (12th Dist.), citing *GTE Automatic Electric, Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. Because all three criteria must be satisfied in order for the trial court to grant relief, the moving party's failure to meet any one of these three factors is fatal. *Scrimizzi v. Scrimizzi*, 2019-Ohio-2793, ¶ 51 (12th Dist.).

{¶ 37} A party moving for relief from judgment under Civ.R. 60(B) is not automatically entitled to an evidentiary hearing and bears the burden of proving entitlement to a hearing. *In re C.W.*, 2025-Ohio-1931, ¶ 18 (8th Dist.). "If the movant files a motion for relief from judgment and it contains allegations of operative facts which would warrant relief under Civil Rule 60(B), the trial court should grant a hearing to take evidence and verify these facts before it rules on the motion." *Id.*, quoting *Coulson v. Coulson*, 5

Ohio St.3d 12, 16 (1983). "Operative facts" are those that, "if found to be true, would present a meritorious defense." *See Fifth Third Bank v. Schoessler's Supply Room, L.L.C.*, 2010-Ohio-4074, ¶ 13 (12th Dist.)

**{¶ 38}** The corollary to this is that a movant is not entitled to a hearing on a motion for relief from judgment when the motion does not allege operative facts that would entitle the movant to relief from judgment if found to be true. *See Steve Robertson Trucking, L.L.C. v. Todd*, 2024-Ohio-1634, ¶ 16 (12th Dist.).

**{¶ 39}** "The decision to grant or deny a Civ.R. 60(B) motion lies within the trial court's discretion, and the decision will be reversed only for an abuse of discretion." *Hill v. Dorger*, 2024-Ohio-2305, ¶ 16 (12th Dist.).

## 2. Analysis

**{¶ 40}** Upon review, we find that Erika's motion alleged operative facts that, if true, would provide grounds for relief under various provisions of Civ.R. 60(B). Erika's motion, which was verified by Erika's signature, pointed to the Separation Agreement, in which both parties acknowledged that they had "fully disclosed" their "personal and financial situation" and that the validity of the agreement was premised on both parties doing so prior to the execution of the agreement. Erika's verified motion also pointed to evidence suggesting that David, during the divorce proceedings, did not disclose assets of sufficient value that would have enabled him to purchase the Akron real estate. If true, such evidence could potentially constitute surprise, newly discovered evidence, or misrepresentation or misconduct on the part of David in the discovery process. Civ.R. 60(B)(1), (2), or (3). As such, in our view, Erika met her burden under Civ.R. 60(B) to obtain an evidentiary hearing.

{¶ 41} But the domestic relations court went further than simply declining to hold an evidentiary hearing. The court made factual findings that David properly disclosed information about the RSUs to Erika:

> [Erika's] belief that the RSU's were extinguished when [David] left his employment with Broadcom was not due to [David's] lack of disclosure. Rather, [Erika] made assumptions about Broadcom's Stock Incentive Plan which she relied upon to her apparent detriment.

{¶ 42} These factual findings appear to be based on David's counsel's argument at the Post-Decree Hearing that David fully disclosed to Erika the existence of the RSUs and the terms under which they could be converted to common stock. But no testimony or evidence was taken at the Post-Decree Hearing; the court only heard—and relied on— arguments from the parties' respective counsel. Arguments of counsel are not evidence. *See Rubino v. Showalter*, 24 Ohio App.3d 232, 233 (9th Dist. 1985).

{¶ 43} This deficiency is critical here. First, while the court's analysis and factual findings assumed that David paid for the Akron real estate with cash obtained from the sale of common stock that was derived from converted RSUs, *none of these facts were in evidence*. Erika's Post-Decree Motion established—via verified statements—that David paid for the Akron real estate with unexplained, undisclosed cash. In response, David offered only his counsel's argument that the converted RSUs were the source of the cash, first in writing in the Memorandum in Opposition and then orally at the Post-Decree Hearing. But it must not be overlooked: David never offered any affidavit, testimony, or document establishing that the RSUs were the source of the cash for the Akron real estate. The court simply assumed this to be the case based on the argument of counsel.

{¶ 44} Second, even if there were evidence in the record that the RSUs were the ultimate source of the cash used to buy the Akron real estate, David offered only the argument of counsel about what David did or did not disclose about the RSUs (and

common stock) in his responses to Erika's requests for the production of documents and in his document production. The very documents produced in discovery that David's counsel told the court would shed light on the question of what David did or did not disclose are not in the record and so could not be considered by the court. *See generally, Lisboa v. Lisboa*, 2011-Ohio-351, ¶ 10 (8th Dist.).

{¶ 45} Furthermore, the Post-Decree Hearing was attended by counsel only, was referred to by the court as a "pretrial," and there was no indication at the start of the Post-Decree Hearing that it would be considered a merits hearing on the Civ.R. 60(B) motion. Erika was excluded from the Post-Decree Hearing and could not present testimony.

{¶ 46} We thus conclude that the domestic relations court made factual findings based on information not in the record, and without providing Erika the opportunity to present evidence on the record. These factual findings were the basis for the court's decision to deny Erika's Civ.R. 60(B) motion. As such, we find that the court abused its discretion in denying Erika's Civ.R. 60(B) motion.

{¶ 47} Accordingly, we sustain Erika's first assignment of error and remand for an evidentiary hearing on Erika's Civ.R. 60(B) motion for relief from judgment.[3]

---

3. On remand, the domestic relations court should also address whether R.C. 3105.171(I) bars Erika's Civ.R. 60(B) motion. That statute states, "A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses." R.C. 3105.171(I). The Ohio Supreme Court has interpreted this statute as prohibiting a court from "modifying" a property division in a divorce decree in response to a Civ.R. 60(B) motion, absent an agreement by the parties. *See Walsh v. Walsh*, 2019-Ohio-3723, ¶ 22-23. However, at least one district court of appeals has concluded that, despite R.C. 3105.171(I), a domestic relations court still has subject-matter jurisdiction to *vacate* the entirety of a dissolution decree pursuant to Civ.R. 60(B) based on material misstatements made while negotiating the separation agreement. *Quesinberry v. Quesinberry*, 2022-Ohio-635, ¶ 18-21 (2d Dist.). We spoke approvingly of *Quesinberry* in *Kelly v. Kelly*, 2024-Ohio-124, ¶ 16 (12th Dist.), and *Wiseman v. Wiseman*, 2022-Ohio-3689, ¶ 13 (12th Dist.), though we did not issue a specific holding on the matter in either case. Nor have we addressed the question of whether a Civ.R. 60(B) motion that on its surface seeks vacatur of an entire divorce decree, but that in fact seeks mere modification of a property division, should be treated as barred by R.C. 3105.171(I). *See Fahrer v. Fahrer*, 2023-Ohio-4380, ¶ 21-26 (5th Dist.). Rather than decide these issues now, in an appeal in which they have not been addressed by any party, we conclude that this is a legal issue better addressed for the first time by briefing before the trial court, which has not yet decided the scope of relief requested by Erika.

## B. New Trial

{¶ 48} Erika's second assignment of error states:

THE TRIAL COURT ERRED IN DETERMINING THAT [ERIKA] WAS NOT ENTITLED TO A NEW TRIAL PURSUANT TO CIV R. 59(A).

{¶ 49} In her second assignment of error Erika contends that she was entitled to a new trial pursuant to Civ.R. 59(A)(1), (2), (3) and (8).

{¶ 50} Civ.R. 59(A) provides, in relevant part:

(A) Grounds for New Trial. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;

(2) Misconduct of the jury or prevailing party;

(3) Accident or surprise which ordinary prudence could not have guarded against;
. . .

(8) Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial;

. . . .

{¶ 51} A trial court's decision on a motion for a new trial under Civ.R. 59(A)(1), (2), (3) and (8) is reviewed under the abuse-of-discretion standard. *Nwankwo v. Uzodinma*, 2022-Ohio-565, ¶ 39 (12th Dist.); *Nwafo v. Ugwualor*, 2024-Ohio-189, ¶ 11 (12th Dist.). An abuse of discretion implies a ruling that is unreasonable, arbitrary, or unconscionable. *Nwafo* at *id*.

{¶ 52} A threshold question that must be answered in determining whether a *new* trial is warranted under Civ.R. 59—that is, whether the trial court in fact conducted a "trial"

- 15 -

in the first place. *Shepherd v. Shepherd*, 2018-Ohio-1037, ¶ 20 (10th Dist.). *Accord Wolf-Sabatino v. Sabatino*, 2012-Ohio-6232, ¶ 13 (10th Dist.) ("A motion for a new trial properly lies only after a trial."); *Fougere v. Estate of Fougere*, 2017-Ohio-7905, ¶ 14 (10th Dist.) ("A motion for a new trial is a nullity unless it is filed after a trial has occurred.")

{¶ 53} In *First Bank of Marietta v. Mascrete, Inc.*, 79 Ohio St.3d 503 (1997), the Ohio Supreme Court addressed the meaning of the word "trial" for purposes of Civ.R. 59. The supreme court held that the proper test for determination of whether a proceeding is a "trial," subject to a Civ.R. 59 motion for a new trial, is an "inquiry that focuses on the substance of the proceeding rather than on its form." *Id*. at 507. The court further stated that a proceeding should be considered a trial for Civ.R. 59 purposes when the "indicia of trial substantially predominate in the proceeding." *Id*.

{¶ 54} The court identified the following as relevant indicia:

> (1) whether the proceeding was initiated by pleadings, (2) whether it took place in court, (3) whether it was held in the presence of a judge or magistrate, (4) whether the parties or their counsel were present, (5) whether evidence was introduced, (6) whether arguments were presented in court by counsel, (7) whether issues of fact were decided by the judge or magistrate, (8) whether the issues decided were central or ancillary to the primary dispute between the parties, (9) whether a judgment was rendered on the evidence. The list of factors is not intended to be exhaustive. Other indicia may be considered.

*Id*. at 507.

{¶ 55} The Tenth District Court of Appeals has twice addressed the scenario presented here, i.e., where a party filed a Civ.R. 59 new trial motion where there was no trial on contested issues but instead a divorce decree was entered based on a separation agreement negotiated by the parties. In *Shepherd*, 2018-Ohio-1037 (10th Dist.), the parties executed a divorce settlement memorandum, appeared before the judge, confirmed their agreement under oath, and the court entered an agreed judgment entry

and decree of divorce. *Id*. at ¶ 10. When the husband later filed a Civ.R. 59 motion for a new trial, the trial court denied it on the ground that no trial occurred: no evidence was submitted, no arguments were given as to assets, liability, or parental rights, and the court made no findings of fact and issued no decision based on evidence submitted. *Id.* at ¶ 14. The court of appeals affirmed, holding that under the *Mascrete* analysis, a judgment entry and divorce decree that is the result of a settlement agreement reached between the parties does not generally constitute a trial for purposes of Civ.R. 59. *Id*. at ¶ 22.

{¶ 56} Likewise, in *Byrd v. Byrd*, 2002-Ohio-2579 (10th Dist.), the parties executed a settlement agreement that was fully incorporated into the parties' divorce decree. *Id*. at ¶ 7. Applying the *Mascrete* factors, the trial court concluded that no trial had occurred for Civ.R. 59 purposes because the decree was the result of a settlement agreement, no evidence was introduced, the parties presented no argument to the court, the court decided no issues of fact, and the court simply incorporated the parties' agreement into the decree. *Id*. at ¶ 27. The court of appeals affirmed, finding no error in the application of the *Mascrete* factors. *Id*. at ¶ 30.

{¶ 57} In the present case, the Divorce Hearing was held on November 22, 2024. Both parties were sworn and offered testimony. However, that testimony was limited to the parties confirming the basic grounds necessary to grant a divorce, confirming that both parties believed that each other had fully disclosed assets and liabilities, and confirming that the parties agreed that they had voluntarily entered into the negotiated separation agreement and requested that the court incorporate the separation agreement into the decree of divorce. No other evidence was introduced, no arguments were submitted to the court for decision, and the court did not decide any issues of fact. Applying the *Mascrete* factors to the present case plainly reveals that "indicia of trial" did not "substantially predominate" at the Divorce Hearing. Like the hearings in *Shepherd*

and *Byrd*, the Divorce Hearing was a non-contested hearing held for the purposes of creating a record that the parties were submitting a negotiated separation agreement to the court for approval and incorporation into the divorce decree. Accordingly, because no "trial" for purposes of Civ.R. 59 occurred in this case, we find no error in the trial court's decision to deny Erika's motion for a "new" trial.

{¶ 58} We overrule Erika's second assignment of error.

### C. Attorney Fees

{¶ 59} Erika's third assignment of error states:

> THE TRIAL COURT ERRED IN ORDERING [ERIKA] TO PAY ATTORNEY FEES TO [DAVID].

{¶ 60} In her third assignment of error, Erika argues that the court abused its discretion in ordering attorney fees because the court should not have dismissed her post-decree motions.

{¶ 61} R.C. 3105.73(B) permits a domestic relations court to award attorney fees arising out of post-decree motions or proceedings "if the court finds the award equitable." We review an award of attorney fees under this statute for an abuse of discretion. *Lykins v. Lykins*, 2023-Ohio-4469, ¶ 68 (12th Dist.)

{¶ 62} The domestic relations court did not explain its rationale in ordering attorney fees, or otherwise explain why it found an award equitable. Presumably the court ordered attorney fees because it concluded that Erika's Post-Decree Motion was meritless. But because we found that the Post-Decree Motion had merit, we find no equitable basis for an award of attorney fees at this juncture of the proceedings. Accordingly, we find that the award constituted an abuse of discretion and vacate the award of attorney fees.

{¶ 63} We sustain Erika's third assignment of error.

### III. Conclusion

**{¶ 64}** For the foregoing reasons, we sustain Erika's first and third assignments of error and overrule Erika's second assignment of error.

**{¶ 65}** Judgment affirmed in part, reversed in part, and matter remanded for further proceedings.

PIPER and M. POWELL, JJ., concur.

---

# J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed as to the denial of appellant's Civ.R. 60(B) motion and the award of attorney fees to appellee, and remanded for further proceedings according to law and consistent with the above Opinion. In all other respects, the judgment of the trial court is affirmed.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas, Domestic Relations Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 67% to appellee and 33% to appellant.

*/s/ Matthew R. Byrne, Presiding Judge*

*/s/ Robin N. Piper, Judge*

*/s/ Mike Powell, Judge*